KENNETH JONES ET AL. *v.* ALLAN A. CRYSTAL,
COMMISSIONER OF REVENUE SERVICES
(AC 15799)

Foti, Freedman and Stoughton, Js.

Argued November 12, 1997—officially released February 17, 1998

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Robert J. Percy,* for the appellees (plaintiffs).

*Opinion*

FREEDMAN, J. In this tax appeal, the defendant commissioner of revenue services appeals from the decision of the trial court, remanding the action to the commissioner for further proceedings.[1] The following facts are relevant to this appeal. The plaintiffs[2] operate a business in Bridgeport known as Main Port Fish & Chips, a business that sells fish dishes, sandwiches, chowders, salads, desserts and beverages. Main Port has ten tables, capable of seating thirty-five persons. In addition, Main Port sells a substantial amount of take-out food. Both dining room and take-out customers place their orders from a one page menu at the counter, where a cashier registers the order.

---

[1] This court previously dismissed the commissioner's appeal and the plaintiffs' cross appeal for lack of a final judgment. The commissioner filed a petition for certification to the Supreme Court. The Supreme Court reversed our judgment and remanded the case to this court to consider the commissioner's appeal. *Jones* v. *Crystal,* 242 Conn. 599, 603, 699 A.2d 961 (1997). The Supreme Court further held, however, that because the plaintiffs did not file a petition for certification in the Supreme Court pursuant to Practice Book § 4126 or a cross petition for certification pursuant to Practice Book § 4129, the judgment dismissing the cross appeal was not affected by the remand. Id., 603–604. This opinion, therefore, will address only the issues raised in the commissioner's appeal.

[2] The plaintiffs are Kenneth Jones, Edward Jones and David Jones, doing business as Main Port Fish & Chips. Hereinafter, the plaintiffs will be referred to as Main Port.

The commissioner conducted a sales and use tax audit of Main Port for the period September 1, 1988, through August 31, 1991. On September 1, 1992, the commissioner issued an assessment against Main Port asserting a sales and use tax deficiency plus interest and a penalty. Main Port protested the assessment to the commissioner's appellate division. On July 21, 1993, the commissioner issued its final determination, concluding that the amount owed by Main Port was $42,378.75. Main Port appealed to the trial court, which reviewed Main Port's claimed exemptions and remanded the case to the commissioner for further proceedings. The commissioner appealed from the trial court's decision on the issues regarding Main Port's claimed exemptions.[3] We reverse the decision of the trial court in part.

I

The commissioner first argues that the trial court improperly construed the department of revenue services 1990 Bulletin No. 17 to find that sales of three or more pieces of fish and a pint of coleslaw are bulk sales of grocery food exempt from sales tax. To resolve this claim properly, we must examine the relevant statutes, regulations and bulletins. Before we do so, however, we must first note "the principles of statutory construction that govern the availability of a tax exemption. First, statutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer. Second, any ambiguity in

---

[3] In addition to its conclusions regarding Main Port's claimed exemptions, the trial court also found that the commissioner's auditors did not consult Main Port's cash register tapes, and that Main Port did not produce the tapes until the field stage of the audit had been completed. The trial court further found no evidence that Main Port withheld the tapes in bad faith. The trial court, therefore, remanded the case to the commissioner for a redetermination of Main Port's sales tax liability based on all of the available evidence, including the now available tapes. The commissioner does not challenge that portion of the trial court's decision.

the statutory formulation of an exemption must be resolved against the taxpayer. Third, the taxpayer must bear the burden of proving the error in an adverse assessment concerning an exemption." *Plastic Tooling Aids Laboratory, Inc.* v. *Commissioner of Revenue Services*, 213 Conn. 365, 369, 567 A.2d 1218 (1990). Furthermore, "[i]t is axiomatic that a statute, even one providing for a tax exemption, should not be construed to effectuate a bizarre or irrational result." *Rich-Taubman Associates* v. *Commissioner of Revenue Services*, 236 Conn. 613, 621, 674 A.2d 805 (1996).

In Connecticut, sales tax is imposed on the sale of all tangible personal property unless specifically exempted. See General Statutes §§ 12-407 (2) (a) and 12-408. General Statutes § 12-412 (13)[4] specifically provides an exemption for "[s]ales of food products for human consumption." The definition of "food products" within this statute is very broad. The statute provides,

---

[4] General Statutes § 12-412 (13) provides: "Sales of food products for human consumption. 'Food products' include cereals and cereal products, milk and milk products, oleomargarine, meat and meat products, fish and fish products, eggs and egg products, vegetables and vegetable products, fruit and fruit products, spices and salt, sugar and sugar products other than candy and confectionery; coffee and coffee substitutes, tea, cocoa and cocoa products other than candy and confectionery. 'Food products' do not include spirituous, malt or vinous liquors, soft drinks, sodas or beverages such as are ordinarily dispensed at bars and soda fountains, or in connection therewith, medicines except by prescription, tonics and preparations in liquid, powdered, granular, tablet, capsule, lozenge and pill form sold as dietary supplements or adjuncts. *'Food products' also do not include meals sold by an eating establishment or caterer. 'Meal' means food products which are furnished, prepared or served in such a form and in such portions that they are ready for immediate consumption. A meal as defined in this subsection includes food products which are sold on a 'take out' or 'to go' basis and which are actually packaged or wrapped. The sale of a meal, as defined in this subsection, is a taxable sale.* 'Eating establishment' means a place where meals are sold and includes a restaurant, cafeteria, grinder shop, pizzeria, drive-in, fast food outlet, ice cream truck, hot dog cart, refreshment stand, sandwich shop, private or social club, cocktail lounge, tavern, diner, snack bar, or hotel or boarding house which furnishes both lodging and meals to its guests." (Emphasis added.)

however, that " '[f]ood products' . . . do not include meals sold by an eating establishment or caterer." The statute further provides that " '[m]eal' means food products which are furnished, prepared or served in such a form and in such portions that they are ready for immediate consumption. A meal . . . includes food products which are sold on a 'take out' or 'to go' basis and which are actually packaged or wrapped." Thus, pursuant to this statute, food products are exempt from the sales tax unless they constitute meals, which are not exempt.

We turn next to § 12-426-29 of the Regulations of Connecticut State Agencies, titled, "Exemption of food products for human consumption; Taxability of meals sold by eating establishments or caterers." This regulation states that its purpose "is to clarify what is covered by that exemption." Section 12-426-29 (c) (1) defines "meals" as "food products for human consumption sold in such form and such portions that they are ready for immediate consumption and are of a type normally consumed on or near the location of the seller." This regulation distinguishes "bulk sales" and "meals," stating in pertinent part that " '[m]eals' do not include bulk sales of food products unless meant for consumption on or near the location of the seller. Examples of such bulk sales include the sale of ice cream in one-half gallon containers, whole pies, cold sliced meat sold by the pound and cold salads sold by the pound. Examples of sales which are not bulk sales include the sale of whole pizza pies and buckets of fried chicken."

To further clarify the taxability of meals, the department of revenue services promulgated Bulletin No. 17. Unfortunately, Bulletin No. 17 was revised during the audit period in question, so that different versions apply to the present case at different times. As previously noted, the commissioner conducted a sales and use tax

audit of Main Port for the period September 1, 1988, through August 31, 1991. The first version of Bulletin No. 17 (version I) was issued in August, 1987, prior to the commencement of the audit period. In May, 1990, the department of revenue services revised Bulletin No. 17 and, therefore, the revised version (version II) applies during the latter portion of the audit period.

Version I of Bulletin No. 17 provides in part that "[m]eals consist of food products ordinarily sold in such form and portions that they are ready for immediate consumption on or near the location of the seller. A meal may be a full dinner or it may be limited to a single item. . . . Meals costing $2.00 or more are subject to tax whether they are served at the location of the seller or are sold as a 'take-out' order." Version I further provides that "[t]he sale of food items in bulk would not generally be considered the sale of a meal. Examples of exempt bulk food sales would include the sale of a half gallon of ice cream at an ice cream shop or a box of a dozen donuts at a coffee and donut shop. *However, the sale of a hot pizza by a pizzeria or the sale of a large container of hot fried chicken or fish pieces by a restaurant is considered the sale of a meal and is subject to tax, if it costs $2 or more.*" (Emphasis added.) The trial court, interpreting version I of Bulletin No. 17, concluded that the sale of a large order of fish, as well as a fish "platter" and a serving of five stuffed clams were meals subject to the sales tax. The trial court reached the same conclusion under version I with regard to pints of chowder, pints of coleslaw and large orders of fries. The commissioner does not challenge these conclusions.

The trial court, however, further concluded that under version II of Bulletin No. 17, sales of three pieces of fish or more and pints of coleslaw are bulk sales and

are, therefore, exempt from the sales tax. The commissioner challenges that holding.

Version II of Bulletin No. 17 provides in part that "[t]he sale of food items in bulk is not generally considered the sale of a meal. Exempt bulk food items are those items sold in such form or in portions which are larger than those which are ordinarily considered for immediate consumption. For example, whole cooked chickens, racks of cooked ribs, whole loaves of bread, and whole cakes or pies are considered bulk food purchases and are, therefore, not taxable." Version II then goes on to list examples of taxable meals.[5] The specific reference to fish pieces as a taxable meal that was

---

[5] Version II of Bulletin No. 17 provides in pertinent part:

"(5) <u>Examples of Taxable Meals</u>*

Examples of food for immediate consumption include, but are not limited to, the following:

- Coffee or tea (ready to consume - hot or iced)
- Sandwiches and grinders
- Popsicles, ice cream cones, cups, sundaes, and other individual servings of frozen desserts unless sold in factory prepackaged multi-unit packs
- Ice cream, frozen yogurt, and other frozen desserts sold in containers of less than one pint
- Yogurt sold in containers 8 oz. or less unless sold in factory prepackaged multi-unit packs
- Fountain drinks, shakes, syrup flavored crushed ice drinks
- Bottled or canned fruit juices and drinks, containers of milk, non-carbonated mineral or spring water sold in containers 12 oz. or less unless sold in factory prepackaged multi-unit packs
- Salads sold at salad bars
- Salads sold in containers of less than one-half pound
- Donuts, muffins, rolls, bagels, pastries (5 or fewer)
- Cookies (sold 5 or fewer or sold less than one-half pound)
- Pies or cakes by the slice
- Bags or packages of chips, popcorn, nuts, trail mix, crackers, cookies, snack cakes, or other snack foods sold 5 oz. or less
- Single pieces of fruit
- Pizza sold whole or sliced
- Cooked chicken sold by the piece, including 'buckets' of chicken

* Items sold in quantities or portions which are larger than those noted above are considered to be bulk sales and, therefore, are not generally considered to be taxable as meals."

present in version I was deleted in version II. The trial court placed great reliance on that omission in concluding that three or more fish pieces are bulk sales exempt from the sales tax under version II.[6]

The commissioner argues, however, and we agree, that the omission of fish pieces in version II is not significant in that the language immediately preceding the list states that "*[e]xamples of food for immediate consumption include, but are not limited to, the following* . . . ." The question to be resolved in determining whether the sales tax applies is whether pieces of fish are more like bulk food, such as whole loaves of bread and whole cakes or pies, or meals, such as pizza and cooked chicken sold by the piece, including buckets of chicken. If it were otherwise, any particular item of food that is not included on the list of examples of taxable meals would automatically be considered a tax exempt bulk sale. Such a construction would "effectuate a bizarre or irrational result." *Rich-Taubman Associates* v. *Commissioner of Revenue Services*, supra, 236 Conn. 621.

We conclude that fish pieces are similar to pieces or buckets of chicken and, therefore, constitute meals subject to the sales tax.

The commissioner next challenges the trial court's conclusion that the sale of a pint of coleslaw is a bulk sale exempt from the sales tax under version II. We agree with the commissioner.

According to § 12-426-29 (c) (1) of the Regulations of Connecticut State Agencies, "[m]eals do not include

---

[6] Specifically, the trial court stated in part that "because 'fish pieces' are no longer specifically treated in version II, they must be dealt with by more general principles. . . . The most helpful general principle appears to be that of the last sentence. Quantities or portions larger than those specifically itemized are considered to be bulk sales."

bulk sales of food products unless meant for consumption on or near the location of the seller. *Examples of such bulk sales include the sale of . . . cold salads sold by the pound.*" (Emphasis added.) Version II of Bulletin No. 17 provides in part that "[s]alads sold in containers of less than one-half pound" are taxable meals. The trial court held that it is "likely that a pint of coleslaw weighs more than one-half pound. A pint of coleslaw is, consequently, a 'bulk sale.' "[7]

We initially note that coleslaw is "a *salad* made of raw sliced or chopped cabbage." (Emphasis added.) Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). We further note that Main Port does not sell coleslaw by weight. A review of Main Port's menu reveals that coleslaw is sold in individual portions and by the pint. In order for coleslaw to be considered a bulk food under the applicable regulation and version II of Bulletin No. 17, it would have to be sold in containers of greater than one-half pound. Because Main Port does not sell coleslaw by weight, we conclude that the trial court incorrectly concluded that the sale of a pint of coleslaw is a bulk sale.[8]

## II

The commissioner next argues that the trial court improperly considered individual food items in a single transaction to be meals under $2 and, therefore, exempt from sales tax under General Statutes § 12-412 (51).[9]

[7] In reaching this conclusion, the trial court relied on "the ancient maxim that a pint's a pound the world round." We decline to accept this maxim as persuasive authority.

[8] The trial court further found that a pint of chowder, a large order of fries and five stuffed clams are meals under version II. This finding has not been challenged on appeal.

[9] General Statutes (Rev. to 1987) § 12-412 (51) provides an exemption for "[t]he sale of any meal, as defined in subsection (13) of this section, for which the purchaser is charged a total of less than two dollars. The exemption provided herein shall apply to the total charge for each such meal separately computed. The gross receipts from all such meals costing less

We agree. Section 12-412 (51) was repealed in 1989. See Public Acts 1989, No. 89-251, § 202. It was in effect, however, at the beginning of the audit period.

General Statutes (Rev. to 1987) § 12-412 (51) provided an exemption for "[t]he sale of any meal, as defined in subsection (13) of this section, for which the purchaser is charged a total of less than two dollars . . . ." As previously stated, a meal is "food products which are furnished, prepared or served in such form and in such portions that they are ready for immediate consumption." General Statutes § 12-412 (13).[10] Main Port, in its application of this exemption, treated each individual item that it sold as a "meal." The trial court properly described the issue as follows: "[T]o take one example, if a hypothetical customer ordered a cup of chowder, a small order of fries, and a stuffed clam, each of these items would be considered a 'meal' [by Main Port]. Suppose that the cost of each of these items was $1. In spite of the fact that the total cost of these items is

than two dollars shall be exempt from the tax imposed by this chapter, provided the retailer claiming such exemption shall maintain adequate records to support the same. If records are not adequate for purposes of such exemption, as determined by the commissioner of revenue services, such gross receipts shall be subject to tax under this chapter."

[10] As previously noted, General Statutes § 12-412 (51) was repealed in 1989. Prior to the repeal of § 12-412 (51), the definition of "meal" in General Statutes § 12-412 (13) contained certain references to § 12-412 (51). These references were also deleted in 1989. See Public Acts 1989, No. 89-251, § 13. The definition of "meal" contained in General Statutes (Rev. to 1987), § 12-412 (13), as amended by Public Acts 1987, No. 87-177, provided: " 'Meal" means food products which are furnished, prepared or served in such a form and in such portions that they are ready for immediate consumption, provided any meal exempt from tax in accordance with subsection (51) of this section may include any nonalcoholic beverage which is not a food product, as that term is defined in this subsection, if such meal includes food products in addition to such nonalcoholic beverage. A meal as defined in this subsection includes food products which are sold on a 'take out' or 'to go' basis and which are actually packaged or wrapped. The sale of a meal as defined in this subsection, subject to the exemption allowed under said subsection (51) of this section, is a taxable sale."

$3, Main Port treated this purchase as a purchase of three 'meals,' each costing less than $2. The question presented is whether this treatment was appropriate."

We again note that statutes that provide exemptions from taxation must be strictly construed against the taxpayer and that any ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer. *Plastic Tooling Aids Laboratory Inc.* v. *Commissioner*, supra, 213 Conn. 369. Because § 12-412 (51) provides an exemption for meals under $2, any ambiguity must be resolved in favor of the commissioner.

With this principle in mind, we next consider that a meal is the portion of food taken at one time to satisfy appetite. Merriam-Webster's Collegiate Dictionary (10th Ed. 1993). Neither this definition nor the definition in § 12-412 (13) provides that each individual item is a separate meal for purposes of the $2 exemption. We therefore disagree with the trial court's conclusion that "[a]ny particular item—whether it be an order of fries, a stuffed clam, or a piece of fish—sold by Main Port plainly qualifies as a 'meal' under [the definition in § 12-412 (13)]. If a customer orders three such items, it is consistent with the statute to treat such a purchase as a purchase of three 'meals.' " We conclude, rather, that a meal for purposes of § 12-412 (51) consists of the total number of items of food charged to a person or persons at one given time. Such a construction is consistent with both the statutory and dictionary definitions of a meal.

### III

Finally, the commissioner challenges the trial court's interpretation of the exemption in General Statutes § 12-412 (9)[11] regarding sales to patients in nursing

[11] General Statutes (Rev. to 1991) § 12-412 (9), titled, "Educational institution and certain health and care facility meals," provides an exemption from the sales tax for "[s]ales of food products and meals in a student cafeteria,

homes. The commissioner argues that to qualify for the exemption in § 12-412 (9), Main Port must show that the meal was served and sold in a hospital, home for the aged, convalescent home, nursing home or rest home to a patient pursuant to an arrangement whereby Main Port ran the institution's cafeteria or dining facility.

The commissioner, however, raises this issue for the first time on appeal.[12] "Practice Book § 4061 provides that '[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial.' This court follows the '[long-standing] rule that absent certain exceptional circumstances . . . claims not distinctly raised at trial will not be reviewed on appeal.' *Biggs* v. *Warden*, 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991)." *In re Michael A.*, 47 Conn. App. 105, 110, 703 A.2d 1146 (1997). We therefore decline to review this claim.

The judgment is reversed in part and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

---

dining-hall, dormitory, fraternity or sorority maintained in a private, public or parochial school, college or university, to members of such institutions or organizations and sales of food products and meals to patients in hospitals, homes for the aged, convalescent homes, nursing homes and rest homes."

[12] The commissioner did argue in the trial court that he properly disallowed Main Port's claimed exemptions pursuant to General Statutes § 12-412 (9). The commissioner argued, however, that the exemption turned on the interpretation of the word "patient." This is not the same claim made by the commissioner on appeal.