HVT, INC. *v.* PAMELA LAW, COMMISSIONER
OF REVENUE SERVICES
(SC 18296)

Norcott, Palmer, Zarella, McLachlan, Eveleigh and Vertefeuille, Js.

624

Argued January 6—officially released April 19, 2011

*Linda L. Morkan*, with whom were *Christine E. Bromberg* and, on the brief, *Richard W. Tomeo*, for the appellant (plaintiff).

*Robert W. Clark*, assistant attorney general, with whom were *Louis P. Bucari, Jr.*, and, on the brief, *Richard Blumenthal*, former attorney general, for the appellee (defendant).

*Charles H. Lenore* and *Daniel L. Gottfried* filed a brief for the Association of Consumer Vehicle Lessors as amicus curiae.

*Opinion*

NORCOTT, J. The sole issue in this appeal is whether vehicle registration renewal fees (renewal fees) paid directly to the department of motor vehicles (department) by lessees under motor vehicle lease agreements (leases) qualify as the lessor's "gross receipts" pursuant to General Statutes § 12-407 (a) (9) (A),[1] rendering them subject to sales tax under General Statutes § 12-408 (1).[2] The plaintiff, HVT, Inc., appeals[3] from the summary judgment rendered by the trial court partially in favor of the defendant, Pamela Law, the then commissioner of revenue services, in the plaintiff's tax appeal chal-

_____

[1] General Statutes § 12-407 (a) (9) (A) provides in relevant part: " 'Gross receipts' means . . . the total amount of payment or periodic payments from leases or rentals of tangible personal property by a retailer . . . without any deduction on account of . . . (ii) the cost of the materials used, labor or service cost, interest paid, losses or any other expense . . . ."

[2] General Statutes § 12-408 (1) provides in relevant part: "For the privilege of making any sales, as defined in subdivision (2) of subsection (a) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of six per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail . . . ."

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

lenging the defendant's assessment of a sales and use tax against the plaintiff for the audit period from April 1, 2001, through October 31, 2004 (audit period). Because we conclude that the renewal fees paid by the lessees qualify as the plaintiff's gross receipts subject to sales tax under § 12-408 (1), we affirm the judgment of the trial court.

The record and the parties' joint stipulation of facts reveal the following relevant facts and procedural history. The plaintiff is a Delaware corporation and a trustee of the Honda Lease Trust (trust), a Delaware business trust. American Honda Finance Corporation (American Honda), a California corporation, is the servicer of the trust. During the audit period, Connecticut Honda and Acura dealerships (dealerships) entered into approximately 10,000 to 15,000 leases with customers (lessees) pursuant to lease plan agreements between the dealerships, the trust and American Honda. The dealerships, acting under a restricted power of attorney issued by either the plaintiff or the trust, also applied for and obtained from the department original certificates of title and registrations for the leased vehicles in the name of the plaintiff or the trust. Once the dealerships had complied with the terms of the lease plan agreements, the trust assumed and maintained ownership over the leased vehicles and the leases for the duration of the lease terms.

Under the leases, the lessees were responsible for submitting the vehicle registration renewal application (renewal application) and renewal fees to the department on behalf of the trust.[4] The department would

---

[4] The relevant provision of the standard lease between the plaintiff and the lessees stated: "REGISTRATION: I will register the [v]ehicle, as required at the state where the [v]ehicle is garaged and pay for all license, title and registration costs. If I move or change the [v]ehicle's garaging address, I will notify [American Honda] immediately and pay for all resulting taxes and title, registration or other fees."

first send to the trust the renewal application, which would then be signed on behalf of the trust. The trust then forwarded the signed renewal application to the lessee, with a request to return the renewal application along with the renewal fee to the department. Upon receipt of the renewal application and the renewal fee, the department sent the vehicle registration card to the trust. The trust then forwarded the vehicle registration card to the appropriate lessee.[5]

On March 21, 2005, after conducting a sales and use tax audit of the trust for the audit period, during which the defendant concluded that the renewal fees constituted taxable gross receipts of the trust pursuant to § 12-407 (a) (9) (A), she issued a deficiency assessment against the plaintiff in the amount of $124,685.55.[6] On behalf of the trust, the plaintiff subsequently protested the tax assessment by filing a petition for reassessment. The defendant issued a final determination upholding the assessment.

Thereafter, the plaintiff appealed from the deficiency assessment to the trial court, pursuant to General Statutes § 12-422, claiming that the renewal fees did not qualify as gross receipts under § 12-407 (a) (9) (A) in accordance with this court's decision in *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 607 A.2d 410 (1992). On the parties' cross motions for summary judgment, the trial court rendered judgment in part for the defendant, concluding that the terms of the lease agreement established that the renewal fees paid by the lessees "are

---

[5] In limited circumstances, the trust would complete the renewal application and remit the renewal fee to the department, such as when the renewal application would not have been received by the appropriate lessee before the registration had expired, or when the trust had repossessed the leased vehicle. In these situations, the trust would then bill the lessee for the renewal fee.

[6] The total deficiency assessment included $13,391.10 in penalties and $22,021.17 in interest.

part of the gross receipts attributable to the lease and are therefore subject to the sales tax."[7] This appeal followed.[8]

On appeal, the plaintiff claims that the trial court improperly concluded that renewal fees paid to the department are taxable as part of its gross receipts. Primarily, the plaintiff argues that the lessees' payment of renewal fees are expenses incidental to the lease agreement and do not qualify as gross receipts under *AirKaman, Inc.* The plaintiff also argues that: (1) whether the legal obligation to pay renewal fees belongs to the plaintiff or the lessees is irrelevant; (2) the trial court improperly reached its conclusion by interpreting the leases; and (3) this court should follow the legislative and administrative positions of other jurisdictions that have concluded that similar fees are not taxable. The defendant contends in response that: (1) renewal fees paid to the department by lessees are taxable gross receipts; (2) the trial court properly reached its conclusion through its interpretation of and reliance on the leases; (3) *AirKaman, Inc.*, is inapposite; and (4) the statutory and administrative laws of other states have no bearing here. We agree with the defendant and conclude that renewal fees paid to the department by lessees are taxable gross receipts.

As a preliminary matter, we set forth the applicable standard of review and controlling principles. First, we

[7] The trial court rendered judgment in favor of the plaintiff with respect to the 15 percent penalty assessed by the defendant. That judgment is not at issue in this appeal.

[8] The plaintiff subsequently filed a motion for articulation, which the trial court granted. In its motion, the plaintiff requested that the trial court clarify who was statutorily obligated to pay the renewal fees and rule on the applicability of *Geckle* v. *Dubno*, 2 Conn. App. 303, 478 A.2d 263 (1984), and *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 751. The trial court relied on its memorandum of decision in its response. Although the Appellate Court granted the plaintiff's subsequent motion for review of the articulation, it declined to direct the trial court to provide further articulation. ·

note that the parties have stipulated to all material facts on their cross motions for summary judgment, and, thus, only questions of law remain for us to decide. Specifically, whether renewal fees paid to the department by lessees qualify as the plaintiff's "gross receipts" pursuant to § 12-407 (a) (9) (A) is a question of statutory interpretation, over which we exercise plenary review in accordance with well established principles set forth in General Statutes § 1-2z. See, e.g., *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 232, 983 A.2d 1 (2009). "[W]e are also guided by the applicable rules of statutory construction specifically associated with the interpretation of tax statutes. . . . [W]hen the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed against the commissioner [of revenue services] and in favor of the taxpayer." (Citation omitted; internal quotation marks omitted.) Id., 233.

We begin our analysis with the text of § 12-407 (a) (9) (A) and its statutory context. Section 12-407 (a) (9) (A) defines " '[g]ross receipts' " in relevant part as "the total amount of payment or periodic payments from leases or rentals of tangible personal property by a retailer, valued in money, whether received in money or otherwise, which amount is due and owing to the retailer or operator and . . . *whether or not actually received by the retailer or operator*, without any deduction on account of . . . (ii) the cost of the materials used, labor or service cost, interest paid, losses *or any other expense* . . . ." (Emphasis added.) Gross receipts, in turn, are taxed under § 12-408, the sales tax statute, which provides in relevant part: "(1) For the privilege of making any sales, as defined in subdivision (2) of subsection (a) of section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of six per cent of the *gross*

*receipts* of any retailer from the sale of all tangible personal property sold at retail . . . ." (Emphasis added.) Finally, we note that the plaintiff does not claim that any of the exemptions provided for by General Statutes § 12-412, the tax exemption statute, apply to renewal fees.

On the basis of the plain language of the statute, we conclude that renewal fees paid by lessees directly to the department are gross receipts as defined by § 12-407 (a) (9) (A). First, it is undisputed that the transactions between the plaintiff and the lessees, namely, the leasing of motor vehicles, constitute "sale[s]." See General Statutes § 12-407 (a) (2) (" '[s]ale' and 'selling' mean and include . . . [J] [t]he leasing or rental of tangible personal property of any kind whatsoever, including . . . motor vehicles"). Second, as a direct consequence of the sale, any gross receipts the plaintiff received because of its transactions with the lessees were subject to sales tax pursuant to § 12-408 (1). Third, whether the plaintiff actually received the renewal fees is irrelevant because, under § 12-407 (a) (9) (A), the retailer need not "actually [receive]" the payments for them to be considered gross receipts. Finally, the definition of gross receipts provides that there can be no deduction for "any other expense" from the "payment or periodic payments from leases . . . ." General Statutes § 12-407 (a) (9) (A). In the absence of a specific exemption; see, e.g., General Statutes § 12-412 (49)[9] (exempting from

---

[9] General Statutes § 12-412 provides in relevant part: "Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items . . .

"(49) Any payment made by a lessee of a motor vehicle to a lessor for the purpose of paying the property taxes on any such vehicle under a lease which is otherwise subject to the taxes imposed by this chapter if such lease requires the lessee to pay such property taxes and if a separate statement of the amount of any such property tax payment is contained in such lease or in any bill rendered pursuant to such lease. . . ."

taxable gross receipts lessees' property tax payment to lessor); the renewal fees necessarily are included in the plaintiff's gross receipts.[10] See, e.g., *Jones* v. *Crystal,* 47 Conn. App. 694, 697, 707 A.2d 318 ("[i]n Connecticut, sales tax is imposed on the sale of all tangible personal property unless specifically exempted"), cert. denied, 244 Conn. 934, 717 A.2d 232 (1998).[11]

This conclusion is further supported by Connecticut statutory law that places a preexisting—and continuing—legal obligation solely on the *plaintiff* to register and reregister its leased motor vehicles, making that activity integral to the business transaction. As an initial matter, it is undisputed that it is the responsibility of the plaintiff, and lessors in general, to register leased motor vehicles in the first instance. Pursuant to General Statutes § 14-15a (a),[12] leased motor vehicles "shall be

---

[10] The defendant relies on *Geckle* v. *Dubno,* 2 Conn. App. 303, 308, 478 A.2d 263 (1984), for the proposition that a lessor's statutory obligation to pay renewal fees mandates the inclusion of a lessee's payment of those fees in the lessor's gross receipts. In *Geckle,* the Appellate Court concluded that the sales tax applied to a "dollar-for-dollar reimbursement by a lessee to a lessor of ad valorem personal property taxes assessed against and paid by the lessor." Id., 303–304. The court reasoned that the lessees' payments were part of the lessor's "payment or periodic payments received" because it was statutorily obligated to pay personal property taxes on the leased motor vehicles. Id., 308. Although the General Assembly subsequently amended § 12-412 to provide for an exemption for personal property taxes paid under motor vehicle leases; see Public Acts 1985, No. 85-435, § 1; we note that the Appellate Court's reasoning in *Geckle* is consistent with our opinion in the present case.

[11] The dissent contends that the statutory requirement that the payments are " 'due and owing to the retailer' " precludes the renewal payments at issue here from inclusion in the retailer's taxable gross receipts. The dissent reasons that the lessees' payment of the renewal fees directly to the department extends those payments beyond the scope of § 12-407. We disagree. Given the absence of a specific challenge raised by the plaintiff to this particular provision, we simply note that the language of the lease agreement, that the lessee will "register the [v]ehicle . . . and pay for all license, title and registration costs," though ambiguous, contractually binds the lessee to the lessor for payment of the renewal fees, which would appear to render them "due and owing" under the plain language of the statute.

[12] General Statutes § 14-15a (a) provides: "Each passenger motor vehicle, as defined in section 14-1, which is leased or rented for a period of more

registered in this state in accordance with the provisions of section 14-12. . . ." In turn, General Statutes § 14-12 (b)[13] provides in relevant part that, "[t]o obtain a motor vehicle registration, except as provided in subsection (c) of this section, *the owner* shall file in the

than thirty days in a calendar year primarily for use in this state shall be registered in this state in accordance with the provisions of section 14-12. For the purpose of this section, such period shall include all times during which such vehicle may be absent from the state while being used on a daily round-trip basis."

[13] General Statutes § 14-12 provides in relevant part: "(a) No motor vehicle shall be operated or towed on any highway, except as otherwise expressly provided, unless it is registered with the commissioner [of motor vehicles], provided any motor vehicle may be towed for repairs or necessary work if it bears the markers of a licensed and registered dealer, manufacturer or repairer and provided any motor vehicle which is validly registered in another state may, for a period of sixty days following establishment by the owner of residence in this state, be operated on any highway without first being registered with the commissioner. Except as otherwise provided in this subsection (1) a person commits an infraction if he registers a motor vehicle he does not own or if he operates, or allows the operation of, an unregistered motor vehicle on a public highway or (2) a resident of this state who operates a motor vehicle he owns with marker plates issued by another state shall be fined not less than one hundred fifty dollars nor more than three hundred dollars. *If the owner of a motor vehicle previously registered on an annual or biennial basis, the registration of which expired not more than thirty days previously, operates or allows the operation of such a motor vehicle, he shall be fined the amount designated for the infraction of failure to renew a registration, but his right to retain his operator's license shall not be affected. No operator other than the owner shall be subject to penalty for the operation of such a previously registered motor vehicle.* As used in this subsection, the term 'unregistered motor vehicle' includes any vehicle that is not eligible for registration by the commissioner due to the absence of necessary equipment or other characteristics of the vehicle that make it unsuitable for highway operation, unless the operation of such vehicle is expressly permitted by another provision of this chapter or chapter 248.

"(b) To obtain a motor vehicle registration, except as provided in subsection (c) of this section, *the owner shall file in the office of the commissioner an application signed by him and containing such information and proof of ownership as the commissioner may require.* The application shall be made on blanks furnished by the commissioner. The blanks shall be in such form and contain such provisions and information as the commissioner may determine. . . . " (Emphasis added.)

office of the commissioner [of motor vehicles] an application signed by him and containing such information and proof of ownership as the commissioner may require." (Emphasis added.) Indeed, the parties have stipulated that the dealerships, *acting on behalf of the plaintiff and the trust,* applied, paid for and obtained from the department registrations for the leased vehicles in the name of the plaintiff or the trust.[14]

With respect to registration renewal, the legislature has likewise placed that responsibility solely on the lessor or owner of the vehicle. Section 14-12 (a) provides that "[n]o motor vehicle shall be operated or towed on any highway, except as otherwise expressly provided, unless it is registered with the commissioner [of motor vehicles] . . . . If the *owner* of a motor vehicle previously registered on an annual or biennial basis, the registration of which expired not more than thirty days previously, operates or allows the operation of such a motor vehicle, he shall be fined the amount designated for the infraction of failure to renew a registration . . . . *No operator other than the owner shall be subject to penalty for the operation of such a previously registered motor vehicle. . . .*" (Emphasis added.) Consistent with this responsibility is General Statutes § 14-48d,[15] which provides that the department

---

[14] Although the question of whether the initial registration fees are subject to sales tax as gross receipts is not at issue in this appeal, we note that the majority of dealerships reviewed during the tax audit did apply the sales tax to the initial registration fee. This practice was consistent with the defendant's policy statement on the issue. See Department of Revenue Services, Policy Statement, "Sales and Use Tax Trade-In Allowance and Other Procedures in Connection with Lease of Motor Vehicles," PS 96 (10) (1997) ("[c]harges made by a lessor to a lessee for reimbursement of the lessor's title and registration costs are taxable, because it is the lessor as owner of the vehicle, and not the lessee, that is legally responsible for titling and registering the vehicle"), available at http://www.ct.gov/drs/cwp/view.asp?a= 1511&q=267302 (last visited April 7, 2011).

[15] General Statutes § 14-48d provides: "Notwithstanding the provisions of section 14-22 and subsection (a) of section 14-49 concerning the biennial period for the registration of a passenger motor vehicle, and for the registration of certain other motor vehicles not used for commercial purposes, the

may issue to lessors a registration "for a period not to exceed five years, to coincide with the term[s] of [a] lease agreement. . . ." If used, the lease term registration, procured by the lessor pursuant to § 14-15a at the time that the lease agreement is signed, in effect eliminates the lessees' involvement in registration renewal and again makes the lessor solely responsible for keeping the vehicle registered.

The plaintiff argues that the payment of renewal fees is a shared legal obligation and should be treated similar to other shared legal obligations. The plaintiff relies on General Statutes § 14-107 (a),[16] which identifies numerous statutory provisions, under which "[t]he owner, operator or lessee of any motor vehicle may be prosecuted jointly or individually . . . ." Noticeably absent, however, from this itemized list of shared liability is § 14-12, the provision penalizing the operation of a motor vehicle whose registration has expired. Indeed, § 14-12 (a) expressly provides in relevant part that "[n]o operator other than the owner shall be subject to penalty for the operation of such a previously registered motor vehicle. . . ." If the legislature had intended to make both lessor and lessee liable for the operation of a motor vehicle whose registration had expired, it could

commissioner may issue a registration for any such motor vehicle that is owned by a person, firm or corporation licensed in accordance with the provisions of section 14-15 and that is the subject of a lease agreement, for a period not to exceed five years, to coincide with the term of such lease agreement. The fee for any such registration shall be adjusted and prorated on the basis of the fee prescribed for a biennial registration. The commissioner may adopt regulations, in accordance with chapter 54, to implement the provisions of this section."

[16] General Statutes § 14-107 (a) provides: "The owner, operator or lessee of any motor vehicle may be prosecuted jointly or individually for violation of any provision of section 10a-79, 10a-84, 10a-92 or 10a-139, subsection (a) of section 14-13, section 14-18, section 14-39 so far as it relates to the registration of motor vehicles, section 14-80, sections 14-80b, 14-80h, 14-80i and 14-99f, sections 14-96a to 14-96aa, inclusive, or section 14-228, 14-251, 14-252, 14-260 or 14-267a."

have done so expressly in § 14-107.[17] Accordingly, because the legal obligation to register and reregister the leased motor vehicles lies solely with the plaintiff, and the lessees' payment of the renewal fees to the department, pursuant to the lease agreement, relieves the plaintiff of that obligation and thus provides it with a financial benefit, that benefit must be considered part of its gross receipts.

The plaintiff argues, however, that our decision in *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 751, con-

---

[17] The dissent contends that other payments made by lessees, including payments made for insurance coverage, emissions maintenance and vehicle maintenance, "correspond to statutory mandates for vehicle owners in the same manner that the majority claims that the plaintiff's statutory duty to maintain a vehicle's registration supports its conclusion that the renewal fees constitute gross receipts." In support of this proposition, the dissent cites several motor vehicle statutes that, unlike the registration statutes, do not, however, expressly place responsibility for maintaining compliance on the *owner*. Compare General Statutes § 14-12b (proof of insurance required for registration), and General Statutes § 14-164c (d) and (n) (prohibiting motor vehicle operation without passing emissions inspection), and General Statutes § 14-80 (mechanical equipment standards), with General Statutes § 14-12 (a) ("[n]o operator other than the owner shall be subject to penalty for the operation of such a previously registered motor vehicle"), and General Statutes § 14-12 (b) (registration of motor vehicle by owner).

Moreover, although General Statutes § 14-213b, also cited by the dissent, references owner liability with respect to the prohibition of the operation of an uninsured motor vehicle, we note that, unlike the registration payments, insurance payments made by a lessee benefit *both* lessor and lessee. Maintaining a properly insured car benefits: (1) the lessee by financially protecting the lessee in the event the lessee becomes financially liable for some harm to property or another person, regardless of which vehicle the lessee is driving; and (2) the owner and lessor, by likewise insuring it against financial loss resulting from some harm to property or another person, in addition to satisfying the owner's legal obligation under § 14-213b. See General Statutes § 14-213b (a) (requiring owner to provide adequate insurance coverage for vehicle); General Statutes § 38a-335 (a) (describing minimum coverage required to cover liability for damages arising from "ownership, maintenance or use of" motor vehicle). Insurance payments are therefore distinguishable from renewal fees because the lessees' payment of them benefits both lessor (legal benefit and financial protection) and lessee (financial protection), while the lessees' payment of renewal fees operates as a legal benefit to the lessor only.

trols the outcome of this case. We disagree. The plaintiff's retention of sole statutory responsibility for renewing the leased vehicle registration and paying renewal fees distinguishes this case from *AirKaman, Inc.* In *AirKaman, Inc.*, Uniroyal, Inc. (Uniroyal) had entered into a twenty year lease with the state of Connecticut (state) to manage fixed base operations at Oxford Airport. Id., 753. Subsequently, Uniroyal subleased that contract to the plaintiffs, AirKaman, Inc. (AirKaman) and Combs Gate Bradley, Inc. (Combs Gate).[18] Id. Uniroyal compensated both AirKaman and Combs Gate with a weekly payment and a percentage of net income generated (management fee) and reimbursed each for, inter alia, "payroll and payroll expenses," in accordance with their respective subleases. Id., 753–54. We rejected the claim of the defendant commissioner of revenue services that the reimbursements for payroll and payroll expenses were taxable as gross receipts, reasoning that "[t]he notion that reimbursement for out-of-pocket expenditures could constitute a consideration for services rendered is contrary to the concept of payment or recompense."[19] Id., 764. We further noted that both AirKaman and Combs Gate "acted as a mere conduit for Uniroyal with respect to operational expenses and realized no recompense for its services simply by being reimbursed by Uniroyal for its outlay." Id.

Of critical importance in *AirKaman, Inc.*, was the preexisting contractual obligation of Uniroyal, the *customer* in the business transaction with AirKaman and Combs Gate, to the state to provide fixed base operation services, which included the payment of payroll and

---

[18] AirKaman's sublease ran from December, 1981, through December, 1984, and Combs Gates' sublease ran from January, 1985, through October, 1989. *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 753.

[19] We concluded, however, that "the management fee . . . [was] taxable as consideration for the rendering of management services." *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 754.

payroll expenses. Id., 753, 762–65. We noted on multiple occasions that AirKaman and Combs Gate were paying those expenses "on behalf of Uniroyal," underscoring the importance of Uniroyal's preexisting contractual obligation to the state. Id., 763–64. Indeed, we stated that "[t]he lease agreements between Uniroyal and [both AirKaman and Combs Gate] disclose arrangements whereby each plaintiff essentially undertook to act *as Uniroyal's agent* by managing the fixed base operation, which included collecting revenue and paying expenses *on behalf of Uniroyal.*" (Emphasis added.) Id., 763. *AirKaman, Inc.*, thus stands for the proposition that a preexisting financial obligation of the *customer* cannot later be parlayed into the *retailer's* taxable gross receipts if the retailer first satisfies the obligation and is later reimbursed by the customer.[20]

---

[20] We note here that, with regard to the plaintiff's actual receipt of renewal fees, the question of whether the lessees paid the department directly or remitted payment to the plaintiff after it had paid the department is irrelevant. In either case, the department receives the renewal payment, and the plaintiff is relieved of the financial burden of paying the renewal fees. See General Statutes § 12-407 (a) (9) (A) (retailer not required to receive payments for payments to be included in gross receipts).

We also note that the defendant, in a special notice issued in response to our decision in *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 751, and subsequent legislation, endorsed the principle that the question of who had the legal or contractual obligation to pay the expenses at issue is dispositive. The special notice provided: "EXPENSES TO BE INCLUDED IN THE MEASURE OF SALES AND USE TAXES: Generally speaking, a provider of services enumerated in [§ 12-407 (2) (I)] must include all expenses that are billed to a service recipient in the measure of the sales and use taxes, even if such expenses are separately stated on the bill or invoice to the service recipient. *To this general rule, there is one notable exception, for the reimbursement of a service provider by a service recipient for payments of expenses that are the legal or contractual obligation of the service recipient, which the service provider pays to a third party on behalf of the service recipient as an accommodation to the service recipient and for which the service provider had no liability to the third party.* For example, if the service provider pays a service recipient's real property taxes or pays the premium on a fire insurance policy which insures the service recipient's buildings and on which the service recipient is the insured, the reimbursement received by the service provider for having paid these expenses of the service recipient is not includable in the measure of the sales and use taxes.

In contrast, here, it is undisputed that the lessees, as customers, did not have a preexisting contractual or statutory obligation to pay the renewal fees to the department before the lessees entered into their leases; as discussed previously, that obligation belongs solely to the lessor, as the *retailer* and vehicle owner. Because the original obligation to pay the renewal fees belonged to and remained with the plaintiff, the lessees' payment of those fees to the department, and, in some cases, to the plaintiff, cannot qualify as reimbursements to the plaintiff excluded from taxation under *AirKaman, Inc.*

The plaintiff also discusses the laws and regulations of other states that have expressly excluded from gross receipts registration fees similar to those at issue in this case.[21] Although we acknowledge that the position taken by these jurisdictions might well be the better approach, we agree with the defendant that these statutes and regulations support our conclusion that any

"*In contrast, a provider of services enumerated in [§ 12-407 (2) (I)] must include in the measure of the sales and use taxes all reimbursement of the service provider by a service recipient for expenses that are the legal or contractual obligation of the service provider and for which the service provider is liable to a third party,* even if such expenses are separately stated on the bill or invoice to the service recipient. See *Geckle* v. *Dubno*, [supra, 2 Conn. App. 303]. For example, if the reimbursement of the service provider by the service recipient is for insurance premiums payable on an insurance policy that insures the service provider, or for property taxes payable on the service provider's property, the reimbursement is includable in the measure of the sales and use taxes." (Emphasis added.) Department of Revenue Services, Special Notice SN 93(2), "Sales and Use Tax Charges Made by Service Providers After *AirKaman, Inc.* v. *Groppo* and 1992 Conn. Public Acts 17 (May Special Session)" (1993), available at http://www.ct.gov/drs/cwp/view.asp?a=1514&q=268574 (last visited April 7, 2011).

[21] We briefly note that *Velde Ford Sales, Inc.* v. *Dept. of Revenue*, 136 Ill. App. 3d 589, 483 N.E.2d 721 (1985), cited by both parties, is inapposite. That case involved the taxability of a dealership's $25 service fee charged to customers as compensation for the dealership's application for vehicle license and title papers on behalf of the customers. Id., 589–90. The court concluded that the application service was an incident of the sale of the motor vehicle, and thus the fee did not have a sufficiently separate identity so as to be excluded from the vehicle sales price. Id., 592–93.

such exemption is outside the province of the judiciary and must be provided for by the legislature. "[T]he task of changing the law lies with the legislature, not the judiciary." *Director of Health Affairs Policy Planning* v. *Freedom of Information Commission,* 293 Conn. 164, 182, 977 A.2d 148 (2009).

The judgment is affirmed.

In this opinion PALMER, ZARELLA, McLACHLAN and VERTEFEUILLE, Js., concurred.

EVELEIGH, J., dissenting. I respectfully dissent. I disagree with the majority's conclusion that leased motor vehicle registration renewal fees (renewal fees), paid by motor vehicle lessees directly to the department of motor vehicles (department), are part of the "gross receipts," as that term is defined by General Statutes § 12-407 (a) (9) (A), of the plaintiff, HVT, Inc., trustee of a lease trust that owns the motor vehicles, thus constituting part of the plaintiff's taxable gross receipts under General Statutes § 12-408 (1). Specifically, I disagree with the majority's reasoning that, "because the legal obligation to register and reregister the leased motor vehicles lies solely with the plaintiff, and the lessees' payment of the renewal fees to the department, pursuant to the lease agreement, relieves the plaintiff of that obligation and *thus provides it with a financial benefit, that benefit must be considered part of its gross receipts.*" (Emphasis added.) I also disagree with the majority's conclusion that *AirKaman, Inc.* v. *Groppo,* 221 Conn. 751, 607 A.2d 410 (1992), does not control the outcome of this case. I would instead conclude, based on my review of § 12-407 as well as this court's decision in *AirKaman, Inc.,* that the lessees' payment of renewal fees directly to the department does not constitute the plaintiff's taxable gross receipts. Accordingly, I would reverse the judgment of the trial

court and remand the case to that court with direction to render judgment for the plaintiff.

The parties do not dispute that the statute at issue involves the imposition of a tax. Like the majority, I therefore begin with the guiding principle that "[w]hen the issue is the imposition of a tax, rather than a claimed right to an exemption or a deduction, the governing authorities must be strictly construed against the commissioner [of revenue services] and in favor of the taxpayer." (Internal quotation marks omitted.) *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 233, 983 A.2d 1 (2009). In light of the stipulated facts, I also agree with the majority that the narrow question of law before the court, over which we exercise plenary review, is whether the lessees' payment of renewal fees directly to the department constitutes the plaintiff's gross receipts such that the plaintiff must charge the lessees sales tax on that payment.

I begin by reviewing the statutory taxation scheme governing this appeal. See General Statutes § 1-2z. Section 12-408 (1) provides in relevant part that, "[f]or the privilege of making any *sales* . . . at retail, in this state *for a consideration,* a tax is hereby imposed on all retailers at the rate of six per cent of the *gross receipts* of any retailer from the sale of all tangible personal property sold at retail or from the rendering of any services constituting a sale . . . ." (Emphasis added.) Pursuant to the dictates of this statute, three terms are essential to resolving the issue on appeal. First, there is no question that the leasing of a motor vehicle constitutes a "sale." See General Statutes § 12-407 (a) (2) (J); Regs., Conn. State Agencies § 12-426-25.[1] Second,

---

[1] Section 12-426-25 (a) of the Regulations of the State Agencies provides in relevant part: "The rental or leasing of tangible personal property for a consideration in this state is a sale and is subject to the tax. The lessor is a retailer who must register with the [c]ommissioner of [r]evenue [s]ervices for a permit and collect the tax. The tax is imposed upon the gross receipts from the rental or leasing of tangible personal property. Such retailers shall pay the taxes so collected in the manner and form as other retailers licensed to sell tangible personal property. . . ."

although the term "for a consideration" is not defined by statute, this court has stated in this context that " '[c]onsideration' means 'something given as recompense,' a 'payment, reward.' " *AirKaman, Inc.* v. *Groppo,* supra, 221 Conn. 764, citing Webster's Third New International Dictionary. Third, as it pertains to the leasing of tangible personal property, gross receipts are defined as meaning "the total amount of payment or periodic payments from leases or rentals of tangible personal property by a retailer, valued in money, whether received in money or otherwise, which amount is due and owing to the retailer or operator and, subject to the provisions of subdivision (1) of section 12-408, whether or not actually received by the retailer or operator . . . ." General Statutes § 12-407 (a) (9) (A).

Section 12-407 (a) does not define the phrase "due and owing" contained in the definition of gross receipts, nor does any provision of the General Statutes governing taxation, and this court has not analyzed the statutory phrase "due and owing to the retailer . . . ." When interpreting a statute, this court gives effect to all provisions of a statute and avoids a construction that would render any of them superfluous. See *Lopa* v. *Brinker International, Inc.,* 296 Conn. 426, 433, 994 A.2d 1265 (2010). "When a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Potvin* v. *Lincoln Service & Equipment Co.,* 298 Conn. 620, 633, 6 A.3d 60 (2010). According to Black's Law Dictionary, "due" is defined as, inter alia, "[o]wing or payable; constituting a debt," and "owing" is defined as "[t]hat is yet to be paid; owed, due . . . ." Black's Law Dictionary (9th Ed. 2009). This court's common usage of "due and owing" is consistent with these dictionary defini-

tions, namely, to describe an unpaid monetary sum that is allegedly currently payable from one party to another, often under contract, by statute, or following a legal judgment. See, e.g., *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 381, 977 A.2d 650 (2009) (unpaid taxes "due and owing" to defendant); *Knapp* v. *Knapp*, 270 Conn. 815, 825, 856 A.2d 358 (2004) (award of interest on damages "due and owing" to plaintiff); *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 633–34, 850 A.2d 145 (2004) (unpaid attorney's fees "due and owing" to plaintiff).

Although the definition of taxable gross receipts may include funds currently due and owed to, but not yet received by, a retailer, in my view, the statutory definition of gross receipts nonetheless requires that such payments are actually payable to the retailer. I therefore disagree with the majority's reasoning that a lessee's payment of the renewal fees constitutes the plaintiff's gross receipts because that payment inures to the benefit of the plaintiff as the owner and lessor of leased motor vehicles. Upon the expiration of the initial registration, some actor must remit the renewal fees to the department. Under the facts presented, however, lessees do not pay the renewal fees to the plaintiff because those fees are not payable—or, in other words, due and owing—to the plaintiff in its capacity as a lessor of motor vehicles.[2] Rather, as demonstrated by the joint

---

[2] The facts of the present appeal are therefore unlike those before the Appellate Court in *Geckle* v. *Dubno*, 2 Conn. App. 303, 478 A.2d 263 (1984). There, the lessor of motor vehicles paid the personal property taxes assessed against the leased vehicles, and the lessees reimbursed the lessor. Id., 304. Accordingly, the lessees' payments were "due and owing" to the lessor and constituted the lessor's gross receipts. Subsequently, however, the legislature passed legislation exempting such payments from the definition of gross receipts. See General Statutes § 12-412 (49) (gross receipts do not include "[a]ny payment made by a lessee of a motor vehicle to a lessor for the purpose of paying the property taxes on any such vehicle under a lease which is otherwise subject to the taxes imposed by this chapter if such lease requires the lessee to pay such property taxes and if a separate statement of the amount of any such property tax payment is contained in such lease or in any bill rendered pursuant to such lease").

stipulation and the representative lease agreements submitted to the trial court, lessees remit renewal fees to the department as the state agency to which the renewal fees are payable.[3] See General Statutes § 14-15. The comparison of the lessees' monthly lease payments, which are the uncontested gross receipts of the plaintiff, with the lessees' payment of renewal fees, illustrates that renewal fees cannot properly be considered the plaintiff's taxable gross receipts under § 12-407 (a) (9) (A).[4] Monthly lease payments logically correspond to the statutory elements of a retailer's gross receipts and they illustrate the illogic of including renewal fees within the plaintiff's gross receipts. Specifically, monthly lease payments are periodic payments related to the lease of tangible personal property, namely, a vehicle; the payments are valued in dollars and received in money; the payments are due and owing to the plaintiff under the lease agreement for the provision of the vehicle; and the payments may or may not be received by the retailer, such as when the retailer has hired a third party to perform the task of supervising accounts payable.

In my view, the purpose and language of § 12-407 (a) (9) (A) defining gross receipts cannot be stretched to include the lessees' remittance of renewal fees directly to the department when such payments are never due

---

[3] The representative lease agreements between the plaintiff and a lessee provide in relevant part: "REGISTRATION: I will register the [v]ehicle, as required at the state where the [v]ehicle is garaged and pay for all license, title and registration costs. . . ." In certain circumstances, the plaintiff paid the renewal fees to the department, such as when the registration would have expired before the renewal fees were paid to the department and when the plaintiff knew the lessee would not submit the payment, such as when the leased vehicle had been repossessed or was in the process of being repossessed by the plaintiff. The defendant does not dispute that when the owner of a vehicle directly remits the renewal fees payment to the department, there is no tax levied against it.

[4] The monthly lease payment is unaffected by the renewal fees.

or owing to the plaintiff as lessor. If the language of the statute were so expansively interpreted, I see no reason why the definition of taxable gross receipts would also not extend to other payments made by lessees during the course of a lease, such as securing required insurance, maintaining emissions compliance, and performing required maintenance to ensure a vehicle is roadworthy. In my view, the lessees' payment of these fees benefits the plaintiff as owner in the same manner as the majority claims the payment of renewal fees benefits the plaintiff. For instance, at the time of entering into a lease, a vehicle must be registered; it must also be insured. General Statutes § 14-12b. Although the plaintiff and the lessees jointly work to maintain a leased vehicle's registration, they are also obligated to maintain insurance during the course of the lease. General Statutes §§ 14-12b and 4-15a. Further, while the lessees undertake to remit the renewal fees directly to the department and not to the plaintiff, the lessees similarly agree to secure insurance and then remit those payments directly to their insurance company, not to the plaintiff.

Additionally, the lessees' payment of insurance premiums, emissions costs, and fees to maintain a vehicle's roadworthiness correspond to statutory mandates for vehicle owners in the same manner that the majority claims that the plaintiff's statutory duty to maintain a vehicle's registration supports its conclusion that the renewal fees constitute gross receipts. See General Statutes § 14-213b (insurance); General Statutes § 14-164c (d) and (n) (emissions compliance); General Statutes § 14-80 (mechanical equipment standards). Indeed, General Statutes § 14-107 (a) provides in relevant part that "[t]he owner, operator or lessee of any motor vehicle may be prosecuted jointly or individually for violation of" numerous motor vehicle statutes, including General Statutes § 14-13 (a) (failure to carry certificate

of registration and insurance card in vehicle at all times); General Statutes § 14-18 (failure to properly display number plates and registration stickers); General Statutes § 14-80 (b) and (d) (failure to comply with muffler standards); General Statutes § 14-80b (operating vehicle with concealed ball joints or tie rod ends); General Statutes § 14-80h (failure to satisfy braking requirements); General Statutes § 14-99f (operating vehicle with obstructed windshield).

I therefore disagree with the majority's reasoning that, because the lessees' payment of the renewal fees inures to the benefit of the plaintiff, and because the plaintiff is statutorily required to register a leased vehicle, the renewal fees constitute the plaintiff's gross receipts. On the basis of my reading of the statutory language, I would instead conclude that the lessees' payment of renewal fees directly to the department does not constitute the plaintiff's taxable gross receipts because those fees are not "due and owing to the retailer," in this case, the plaintiff.

My conclusion that the lessees' payment of the renewal fees directly to the department does not constitute the plaintiff's taxable gross receipts is further supported by this court's decision in *AirKaman, Inc.* v. *Groppo,* supra, 221 Conn. 764, where this court concluded that the imposition of the sales tax to the transaction at issue "would be improper because a mere transfer of expenses between parties cannot be regarded as a sale of services."[5] The majority in the present case attempts to distinguish *AirKaman, Inc.,*

[5] The statutory definition of "sale" includes both the sale of services; General Statutes § 12-407 (a) (2) (I); such as the provision of management services at issue in *AirKaman, Inc.*; General Statutes § 12-407 (a) (37) (J); as well as the leasing or renting of tangible personal property, such as a vehicle. General Statutes § 12-407 (a) (2) (J). Accordingly, the court's discussion in *AirKaman, Inc.*, of whether a transaction constituted a "sale" is applicable to the present appeal.

concluding that "[t]he plaintiff's retention of sole statutory responsibility for renewing the leased vehicle registration and paying renewal fees distinguishes this case from *AirKaman, Inc.*" I disagree.

As set forth by the majority, "[i]n *AirKaman, Inc.*, Uniroyal, Inc. (Uniroyal) had entered into a twenty year lease with the state of Connecticut (state) to manage fixed base operations at Oxford Airport. [*AirKaman, Inc.* v. *Groppo*, supra, 221 Conn.] 753. Subsequently, Uniroyal subleased that contract to the plaintiffs, AirKaman, Inc. (AirKaman) and Combs Gate Bradley, Inc. (Combs Gate). Id. Uniroyal compensated both AirKaman and Combs Gate with a weekly payment and a percentage of net income generated (management fee) and reimbursed each for, inter alia, 'payroll and payroll expenses,' in accordance with their respective subleases. Id., 753–54."

This court in *AirKaman, Inc.*, subsequently determined the taxability of the two compensations, concluding that the management fees were taxable as gross receipts from the sale of management services, but that the reimbursement of payroll and payroll expenses were not gross receipts. Id., 754, 764. In reaching the conclusion that reimbursement for payroll and payroll expenses did not constitute taxable gross receipts for AirKaman and Combs Gates, the court stated that it was first necessary to "determine the true object of the transaction between [AirKaman and Combs Gates] and Uniroyal." Id., 763. This determination was essential because the sales and use taxes statute only levied a tax on a sale for consideration. Id., 763–64. To determine whether there was a sale for consideration, the court examined the transaction between the parties. Id., 764. After reviewing the facts, the court determined that the "sale" at issue was the provision of airport management services by AirKaman and Combs Gates to Uniroyal, and the "consideration" for that sale was Uniroyal pay-

ing AirKaman and Combs Gates a fixed weekly fee and a percentage of profits. Id., 754. In reaching this conclusion, this court determined that the "sale" could not be understood to mean the transfer of payroll and payroll expenses, and that the reimbursement of those expenses could not be understood to constitute "consideration" for the sale. Id., 764. Specifically, this court concluded that the reimbursement for the transferred expenses could not constitute a sale for consideration because "[t]he notion that reimbursement for out-of-pocket expenditures could constitute consideration for services rendered is contrary to the concept of payment or recompense." Id.

I disagree with the majority's conclusion that the principles of *AirKaman, Inc.*, are inapplicable to the present appeal because of which party—namely, the customer or the retailer—bore the original obligation to remit payroll expenses or pay renewal fees. According to the majority, it was "[o]f critical importance in *AirKaman, Inc.*," that Uniroyal, the customer, bore the preexisting contractual obligation to pay payroll and payroll expenses at the Oxford Airport as part of its contract with the state. The majority reaches this conclusion relying on the language of *AirKaman, Inc.*, wherein this court stated several times that AirKaman and Combs Gate paid the payroll and payroll expenses "on behalf of Uniroyal" or as "Uniroyal's agent." The majority therefore concludes that "*AirKaman, Inc.*, thus stands for the proposition that a preexisting financial obligation of the *customer* cannot later be parlayed into the *retailer's* taxable gross receipts if the retailer first satisfies the obligation and is later reimbursed by the customer." (Emphasis in original.) By way of contrast, the majority states that, in the present appeal, the obligation to remit the renewal fees to the department belongs solely to the plaintiff as the retailer of the vehicles. Therefore, the majority concludes, "[b]ecause the

original obligation to pay the renewal fees belonged to and remained with the plaintiff, the lessees' payment of those fees to the department . . . cannot qualify as reimbursements to the plaintiff excluded from taxation under *AirKaman, Inc.*" I disagree with the majority that the identification of which party bore the original obligation to make the payments was of critical importance to this court's decision in *AirKaman, Inc.*

In my view, nothing in *AirKaman, Inc.*, dictates the majority's application of the holding therein to the undisputed facts of the present appeal. I agree with the majority that, under the facts of *AirKaman, Inc.*, AirKaman and Combs Gate were retailers or the providers of the service, namely, airport management. I also agree with the majority that Uniroyal was the customer. In my view, and the view of the court in *AirKaman, Inc.*, the central facts of *AirKaman, Inc.*, demonstrate that the true object of the contracts between AirKaman and Combs Gate and Uniroyal was the provision of airport management services, for which AirKaman and Combs Gate received taxable management services fees, and the payroll and payroll expenses were an incidental expense transferred from Uniroyal to AirKaman and Combs Gate. *AirKaman, Inc. v. Groppo*, supra, 221 Conn. 754.

Similarly, in the present case, the lessees operated as the customers and the plaintiff as the retailer or the provider of the service, namely, tangible personal property in the form of a leased vehicle. The majority does not dispute this. In my view, the undisputed facts further demonstrate that the true object of the lease agreements between the lessees and the plaintiff was the provision of a leased vehicle, for which the plaintiff received monthly lease payments, and the renewal fee payments were an incidental expense transferred from the plaintiff to the lessees.

Applying the principles of *AirKaman, Inc.*, to the undisputed facts of the present appeal, I would conclude that the "true object of the transaction" at issue was the plaintiff's renting of a leased vehicle to the lessees, a sale under § 12-407 (a) (2) (J), and the consideration for that sale was the lessees' remittance of monthly lease payments. Accordingly, the lessees' payment of the renewal fees to the department was neither the true object of the sale nor consideration for the sale because, similar to the court in *AirKaman, Inc.*, I would conclude that the lessees' payment of the renewal fees directly to the department was the "mere transfer of expenses between parties"; *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 764; not taxable to the plaintiff as gross receipts.

On the basis of the foregoing, I would conclude that the lessees' payments of the renewal fees directly to the department do not constitute the plaintiff's taxable gross receipts because those payments are not "due and owing to the retailer"; General Statutes § 12-407 (a) (9) (A); and because the transfer of the renewal fees from the plaintiff to the lessees is not a sale pursuant to *AirKaman, Inc.* v. *Groppo*, supra, 221 Conn. 764. Accordingly, I would reverse the judgment of the trial court.

I therefore respectfully dissent.