******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LUCKY 13 INDUSTRIES, LLC *v.* COMMISSIONER OF MOTOR VEHICLES
## (AC 43317)

Cradle, Clark and Flynn, Js.

*Syllabus*

The plaintiff, a licensed used car dealer and repairer, appealed to this court from the judgment of the trial court dismissing its administrative appeal from the decision of the defendant Commissioner of Motor Vehicles concluding that the plaintiff had charged an illegal gate fee for the release of a vehicle following a nonconsensual tow to its place of business. The plaintiff towed the vehicle from the scene of an accident to its storage yard at the request of a police officer. A Co., the vehicle's insurer, hired C Co., a salvage company, to retrieve the vehicle. Before C Co. had dispatched a driver to do so, the plaintiff informed C Co. of the total towing and storage charges, which included a $93.59 fee to move the vehicle out of the storage yard and to position it for loading. C Co. directed T Co., a tow operator, to retrieve the vehicle on its behalf. When T Co.'s driver arrived at the plaintiff's place of business, the plaintiff provided him with a form entitled "Consensual Tow Form," which stated, inter alia, that, although T Co. could obtain the vehicle without paying a fee if the driver agreed to wait for a reasonable amount of time following his request for its release, T Co. requested that the plaintiff immediately release the vehicle. The driver signed the form, and the plaintiff released the vehicle to him. A Co. then filed a complaint with the Department of Motor Vehicles, alleging that the $93.59 charge was an illegal gate fee. Following a hearing, the commissioner determined that the tow at issue was nonconsensual and that the fee was charged in violation of the applicable statute (§ 14-66 (a) (3)) and regulation (§ 14-63-36c (a)). The plaintiff was ordered to pay $93.59 in restitution to A Co. and a $1000 civil penalty to the department. *Held*:

1. This court declined to review the plaintiff's unpreserved claim that federal law preempted any state regulations that purported to prohibit the fee that it charged because such fee was paid pursuant to a voluntary agreement for an expedited service, which constituted a consensual tow for purposes of federal law: the plaintiff did not raise a federal preemption claim during the administrative proceedings before the department, and, as a result, the department never ruled on such claim; moreover, the plaintiff failed to raise a preemption claim in its complaint on appeal to the trial court and, instead, raised the claim for the first time in its pretrial brief to the trial court; furthermore, the trial court did not address the argument in its ruling dismissing the administrative appeal, and the plaintiff did not seek an articulation from the trial court.

2. The trial court properly decided that there was substantial evidence to support the commissioner's determination that the plaintiff charged an illegal fee for the release of the vehicle and that the commissioner's decision was not contrary to law: it was undisputed that the plaintiff performed a nonconsensual tow when it transported the disabled vehicle from the scene of the accident to its place of business because the tow was performed at the request of a police officer, and the agreement to provide a more expeditious retrieval of the vehicle from the plaintiff's storage yard did not transform the nonconsensual tow into a consensual one; moreover, the applicable regulations (§§ 14-63-36b (2) (G) and 14-63-36c (e)) unambiguously provide that services related to the release of a vehicle following a nonconsensual tow are included in the tow charge and expressly prohibit wreckers from charging additional fees for the release of a vehicle; furthermore, although § 14-63-36b (4) of the regulations permits licensed wreckers to charge additional fees for exceptional services that are reasonable and necessary for the transporting of a vehicle, the expedited service at issue did not qualify as such an exceptional service; accordingly, pursuant to the applicable regulations and *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles* (300 Conn. 617), the plaintiff was bound by the rates set by the commissioner and was prohibited from charging a gate fee for the

release of the vehicle.

3. The trial court properly determined that the contract executed by the plaintiff and T Co. for expedited services was void as against public policy: the regulations governing nonconsensual tows were implemented to protect individuals whose vehicles had been towed without their consent from exorbitant towing and storage fees through the establishment of reasonable rates for the towing, transporting and storing of motor vehicles that fairly compensate wreckers for their services; moreover, the commissioner promulgated regulations to prohibit wreckers from charging an additional fee for the release of a vehicle incident to a nonconsensual tow because to allow wreckers to set their own rates for such releases would undermine the regulations that establish rates for the towing, transporting and storing of motor vehicles; furthermore, enforcing an agreement that purported to authorize the plaintiff to charge a fee for the release of a vehicle following a nonconsensual tow plainly would erode the public policy reflected in the regulatory scheme and would encourage wreckers to subvert the consumer protections underlying the regulations.

Argued November 16, 2021—officially released February 8, 2022

*Procedural History*

Appeal from the decision of the defendant finding that the plaintiff had charged an unlawful gate fee for the release of a certain vehicle and ordering the plaintiff to pay restitution and a civil penalty for such charge, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Hon. Henry S. Cohn*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Thomas J. Weihing*, with whom, on the brief, was *John T. Bochanis*, for the appellant (plaintiff).

*Anthony C. Famiglietti*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Opinion*

CLARK, J. This administrative appeal arises from a complaint filed with the Department of Motor Vehicles (department), alleging that the plaintiff, Lucky 13 Industries, LLC, doing business as Midnight Auto, charged an illegal "gate fee" for the release of a vehicle following a nonconsensual tow to its place of business.[1] The plaintiff appeals from the judgment of the trial court dismissing its appeal from the decision of the defendant, the Commissioner of Motor Vehicles (commissioner), concluding that the plaintiff had charged an unlawful gate fee and ordering the plaintiff to make restitution to the complainant, Amica Insurance Company (Amica), and to pay a civil penalty to the department. On appeal to this court, the plaintiff claims that federal law preempts state regulation of gate fees charged pursuant to a voluntary agreement. The plaintiff additionally claims that the trial court improperly concluded that (1) the tow at issue was nonconsensual notwithstanding that the plaintiff and Amica's subcontractor executed a contract providing that the plaintiff would perform an "expedited service" when retrieving the vehicle for release and (2) the contract was void as against public policy. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiff's claims. The plaintiff is a licensed used car dealer and repairer. On February 16, 2017, at the request of the Stratford Police Department, the plaintiff towed a vehicle that had been involved in a motor vehicle accident to its place of business. The vehicle was insured by Amica. Thereafter, Amica hired Copart Auto Auctions (Copart), a salvage company, to retrieve the vehicle from the plaintiff's storage yard. On February 23, 2017, Copart contacted the plaintiff to make arrangements to retrieve the vehicle. The plaintiff informed Copart that the towing and storage charges totaled $765.72.[2] The billed amount included a $93.59 fee, which was described in a work order as follows: "Driver could not maneuver truck in yard, request vehicle to be moved out of storage yard so vehicle could be loaded onto truck. Hook-up to vehicle—move out of storage yard—position for loading." The plaintiff charged this fee before Copart had dispatched a driver to retrieve the vehicle. Copart directed Anthony's High Tech (Tech), a tow operator and repair shop, to retrieve the vehicle on its behalf the following day.

On February 24, 2017, a Tech driver arrived at the plaintiff's place of business. The plaintiff provided the driver with a form titled "Consensual Tow Form" (contract), which stated in relevant part that "[Tech], as a [r]epresentative of Copart is hereby advised that [it] can obtain the subject motor vehicle . . . without paying any fee or charge provided all documentation and authorization [are] in order. [Tech] agrees to wait for

said vehicle for a reasonable time after the request for release of the subject vehicle. Notwithstanding the foregoing, [Tech] hereby request[s] that [the plaintiff] immediately provide an employee to assist in the removal, towing and securing of the subject vehicle for transportation . . . ."[3] The Tech driver signed the form, and the plaintiff subsequently retrieved the vehicle from its storage area and released the vehicle to the Tech driver.

On May 19, 2017, the department received a complaint filed by Amica, alleging that the plaintiff had charged a $93.59 gate fee for the release of a disabled vehicle belonging to its insured. On January 15, 2019, following a three day evidentiary hearing, the hearing officer issued a memorandum of decision, finding that the tow at issue was a nonconsensual tow because it was performed at the request of the police[4] and that the fee was therefore charged in violation of General Statutes § 14-66 (a) (3) and § 14-63-36c (a) of the Regulations of Connecticut State Agencies.[5] The plaintiff was ordered to pay $93.59 in restitution to Amica and a $1000 civil penalty to the department.

The plaintiff appealed to the trial court, which also concluded that the tow at issue was a nonconsensual tow and that, in accordance with our Supreme Court's holding in *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 15 A.3d 1063 (2011), the department's hearing officer correctly determined that the plaintiff had charged an illegal gate fee for the release of a vehicle following a nonconsensual tow. The court also rejected the plaintiff's claim that the plaintiff and Amica's agent, Tech, had executed a valid and enforceable contract to perform a consensual tow because the contract violated state law and was therefore void as against public policy. Accordingly, the court dismissed the plaintiff's appeal. This appeal followed.

We begin by setting forth the standard of review and legal principles that govern our resolution of the plaintiff's claims. "[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Commis-*

*sioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000).

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. [See] General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the commissioner, on the facts before [the commissioner], acted contrary to law and in abuse of [the commissioner's] discretion . . . ." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 817, 942 A.2d 305 (2008).

"Even for conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . [Similarly], this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Chairperson, Connecticut Medical Examining Board* v. *Freedom of Information Commission*, 310 Conn. 276, 281–82, 77 A.3d 121 (2013).

I

The plaintiff first claims that federal law preempts any state regulations purporting to prohibit the fee it charged in this case because that fee was paid pursuant to a voluntary agreement for an "expedited service," which constituted a *consensual* tow for purposes of federal law. For the reasons that follow, we decline to review this claim because the plaintiff failed to preserve it.

"It is well known that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level." (Internal quotation marks omitted.) *Towbin* v. *Board of Examiners of Psychologists*, 71 Conn. App. 153, 175, 801 A.2d 851, cert. denied, 262 Conn. 908, 810 A.2d 277 (2002); see also Practice Book § 60-5 ("court shall not be bound to consider a claim unless it was distinctly raised at the trial"). "For us [t]o review [a] claim, which has been articulated for the

first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal. . . . This rule applies to appeals from administrative proceedings as well." (Citation omitted; internal quotation marks omitted.) *Ferraro* v. *Ridgefield European Motors, Inc.*, 313 Conn. 735, 759, 99 A.3d 1114 (2014). "A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the [agency]." *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992).

Our careful review of the record reveals that the plaintiff did not raise a federal preemption claim during the administrative proceedings before the department and, as a result, the department never ruled on that claim. In addition, on appeal to the trial court, the plaintiff did not raise a preemption claim in its complaint. See *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, 140 Conn. App. 754, 759–60, 60 A.3d 297 (purpose of pleadings is to apprise court and opposing counsel of issues to be tried and judgment should conform to issues and prayer for relief set forth in pleadings), cert. denied, 308 Conn. 934, 66 A.3d 497 (2013). Instead, the plaintiff raised the preemption claim for the first time in its pretrial brief to the trial court. The commissioner did not respond to that argument in her brief and the trial court did not address it in its ruling dismissing the plaintiff's administrative appeal. To the extent the plaintiff believed that the claim had been properly raised and that the court had failed to address it, the plaintiff could have, but failed, to seek an articulation from the court. It was the plaintiff's responsibility to do so. See Practice Book § 61-10 (a) (it is appellant's responsibility to provide adequate record for review); *Murphy* v. *Zoning Board of Appeals*, 86 Conn. App. 147, 159, 860 A.2d 764 (2004) (motion for articulation is proper procedure by which appellant may ask trial court to address matter overlooked in its decision), cert. denied, 273 Conn. 910, 870 A.2d 1080 (2005).[6] Because the plaintiff failed to preserve its preemption claim, we decline to review that claim in this appeal.[7]

II

We next address whether the court properly concluded that the plaintiff charged an unauthorized fee for a nonconsensual tow. On appeal, the plaintiff does not dispute that the towing of the vehicle from the scene of the accident to the plaintiff's yard was a non-

consensual tow because it was performed at the request of the police. Nevertheless, the plaintiff argues that, because Tech, acting within its capacity as Amica's agent, agreed to pay the plaintiff an additional fee for the immediate retrieval of the vehicle from the plaintiff's storage yard rather than wait a reasonable time at no extra charge, the plaintiff performed a *consensual* tow when it removed the vehicle from its storage yard and brought it to the designated retrieval area. Stated differently, the plaintiff claims that the execution of a contract between the plaintiff and Amica's agent for an optional, "expedited service" when releasing the vehicle transformed the nonconsensual tow into a consensual tow and that the transaction was therefore exempt in part from the regulations governing nonconsensual tows. We are not persuaded.

Pursuant to § 14-66 (a) (2), which provides in relevant part that "[t]he commissioner shall establish and publish a schedule of uniform rates and charges for the nonconsensual towing and transporting . . . and for the storage of motor vehicles," the commissioner has promulgated §§ 14-63-34 through 14-63-37b of the Regulations of Connecticut State Agencies. These regulations set forth, inter alia, the permissible charges that licensed wreckers may levy in relation to nonconsensual towing operations.[8] Our Supreme Court has held that, under the plain language of the regulations, wreckers are not permitted to charge a gate fee for the release of a vehicle that was towed without the owner's consent. *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 623.

In *Connecticut Motor Cars*, Allstate Insurance Company (Allstate) had filed two complaints with the department alleging that a licensed motor vehicle dealer and repairer improperly charged a gate fee for the release of disabled vehicles belonging to its insureds. Id., 619–20. At the evidentiary hearing, the licensee claimed that it routinely charged a gate fee for the labor and equipment used to move a disabled vehicle from its secured storage area to the retrieval area because such a fee was permitted pursuant to § 14-63-36c (c) of the Regulations of Connecticut State Agencies. Id. Section 14-63-36c (c) provides in relevant part that "[a] licensed wrecker service may charge additional fees . . . for services not included in the tow charge or hourly rate . . . ." The licensee contended that, when it moved a vehicle from its storage area to the retrieval area, it performed a service unrelated to the towing or storing of the vehicle and, therefore, had performed a service not included within the tow charge. *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 620.

Rejecting the licensee's claim, the commissioner concluded that the regulations make clear that services related to the release of a vehicle to an owner following

a nonconsensual tow are included in a tow charge and that the licensee had therefore charged an unlawful gate fee. Id. The commissioner noted that § 14-63-36b (2) (G) of the Regulations of Connecticut State Agencies specifically provides that a tow charge shall include the "[r]*elease of the vehicle* to the owner . . . ."[9] (Emphasis added; internal quotation marks omitted.) Id. The commissioner further observed that § 14-63-36c (e) of the Regulations of Connecticut State Agencies "expressly prohibits additional fees for the release of a motor vehicle . . . ."[10] Id. Consequently, the plaintiff was ordered to make restitution to Allstate and to pay a civil penalty for violating § 14-66 (a) (3), which provides that, with respect to nonconsensual tows, wreckers may not charge more than the rates set by the commissioner. Id., 619 n.3, 620. The licensee appealed to the trial court, which dismissed the appeal, concluding that the commissioner did not abuse his discretion in determining that a gate fee is included in a tow charge. Id., 620–21.

The licensee appealed the court's judgment, and the case was transferred to our Supreme Court. Id., 619 n.2. Our Supreme Court agreed with the commissioner's interpretation of the regulations and affirmed the trial court's judgment. Id., 622–23. It held that § 14-63-36b (2) of the regulations "incontrovertibly establishes that the term 'tow charge' encompasses all of the services rendered in the nonconsensual towing, transporting and *releasing* of a motor vehicle" and, therefore, wreckers are not permitted to charge a gate fee for nonconsensual tows. (Emphasis added.) Id., 623. The court further explained that, although § 14-63-36c (c) of the regulations permits additional fees for services not included in the tow charge, the tow charge "includes all of the services rendered in the [licensee's] gate fee . . . ." Id.

We conclude that the holding in *Connecticut Motor Cars* is squarely on point and is dispositive of the plaintiff's claim in the present appeal. As in *Connecticut Motor Cars*, the plaintiff charged a fee for the release of a vehicle following a nonconsensual tow to its place of business, which is expressly prohibited by the plain language of the regulations. Regs., Conn. State Agencies § 14-63-36c (e). It is undisputed that the plaintiff performed a nonconsensual tow from the accident site to its place of business because the tow was performed at the request of the police. See Regs., Conn. State Agencies § 14-63-34 (nonconsensual towing means "towing or transporting of a motor vehicle . . . for which arrangements are made by order of a law enforcement officer"). The plaintiff was therefore bound by the rates set by the commissioner and prohibited from charging a gate fee for the release of the vehicle to the owner or person entitled to take possession. See *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 623 ("only reasonable interpretation of the regulations is that a gate fee is not permitted").

The plaintiff attempts to distinguish *Connecticut Motor Cars*. It argues that, in the present case, Amica's agent *consented* to pay an additional fee for the immediate release of the vehicle and that, by extension, the tow at issue was *consensual* and not governed by the regulations pertaining to nonconsensual tows. Thus, by the plaintiff's logic, although the tow from the scene of the accident to the plaintiff's place of business was a nonconsensual tow, because Amica's agent entered into a contract for an expedited retrieval service, the plaintiff performed a consensual tow from its secured storage area to the loading area. We disagree.

Although there may be limited circumstances in which a nonconsensual tow later becomes a consensual tow; see *Farmington Auto Park, LLC* v. *Progressive Auto Ins.*, No. CCC-2014-1032 (February 3, 2016) (decision of Department of Motor Vehicles) (nonconsensual tow became consensual tow when vehicle owner signed written authorizations permitting wrecker to commence repairs and store vehicle rather than seeking release of disabled vehicle); no such circumstances were present in this case. The regulations irrefutably establish that a " 'tow charge' encompasses all of the services rendered in the nonconsensual towing, transporting and releasing of a motor vehicle." *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 623. As a result, a nonconsensual tow generally commences at the request of a police officer and continues until the vehicle is released to the owner or person authorized to take possession. An agreement to provide a more expeditious retrieval of the disabled vehicle from the plaintiff's storage yard does not transform what began as a nonconsensual tow into a consensual tow.[11]

The plaintiff contends that, because Amica's agent voluntarily agreed to pay a fee for immediate service rather than wait a reasonable time for the vehicle to be released at no charge, it was permitted to charge an additional fee. The regulations prohibiting gate fees, however, do not include an exception authorizing wreckers to charge such a fee if the owner or person authorized to take possession of the vehicle has consented to a fee for expedited service. Although the regulations include certain exceptions permitting a licensed wrecker to charge fees exceeding the commissioner's published rates, they do not authorize agreements to pay a gate fee.

Section 14-63-36c (c) of the regulations, for example, provides that a licensed wrecker may "charge additional fees for exceptional services, and for services not included in the tow charge or hourly rate, which are reasonable and necessary for the nonconsensual towing or transporting of a motor vehicle." As we have explained, however, the regulations unambiguously provide that services related to the release of a vehicle

following a nonconsensual tow are included in the tow charge. Regs., Conn. State Agencies § 14-63-36b (2) (G); see also *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 622–23. The regulations also expressly prohibit wreckers from charging additional fees for the release of a vehicle to the owner or an authorized agent. Regs., Conn. State Agencies § 14-63-36c (e). Furthermore, an *expedited* service does not qualify as an *exceptional* service under the regulations, which define " 'exceptional services' " as "the use of special equipment such as cutting torches, air compressors and other equipment not generally required for nonconsensual towing or transporting services, at the scene of an accident." Regs., Conn. State Agencies § 14-63-36b (4). The plaintiff's alleged "expedited" retrieval of a vehicle from its storage yard when releasing the vehicle is clearly not encompassed within that definition.

We therefore conclude that the trial court properly decided that there was substantial evidence to support the commissioner's determination that the plaintiff charged an illegal fee for the release of a vehicle and that the commissioner's decision was not contrary to law.

### III

The plaintiff's final claim is that the court improperly concluded that the contract between the plaintiff and Amica's agent was void as against public policy. The plaintiff argues that the contract is enforceable because the plaintiff and the Tech driver voluntarily executed a contract at "arm's length" that benefited all parties to the agreement.[12] The commissioner counters that the freedom to contract does not include the right to contravene state laws or public policy. We conclude that the contract is unenforceable because it is contrary to public policy.

"We begin our analysis of this claim by setting forth the standard of review governing a claim that a contract is unenforceable as a matter of public policy. Although it is well established that parties are free to contract for whatever terms on which they may agree . . . it is equally well established that contracts that violate public policy are unenforceable." (Internal quotation marks omitted.) *Emeritus Senior Living* v. *Lepore*, 183 Conn. App. 23, 30–31, 191 A.3d 212 (2018). "The question of [w]hether a contract is enforceable or illegal is a question . . . to be determined from all the facts and circumstances of each case. Similarly . . . the question [of] whether a contract is against public policy is [a] question of law dependent on the circumstances of the particular case . . . ." (Internal quotation marks omitted.) *Carriage House I-Enfield Assn., Inc.* v. *Johnston*, 160 Conn. App. 226, 245–46, 124 A.3d 952 (2015). If a contract is contrary to public policy, that is, if it negates laws enacted for the common good, it is unenforceable. *Parente* v. *Pirozzoli*, 87 Conn. App. 235, 246, 866 A.2d

629 (2005); see also *12 Havemeyer Place Co., LLC* v. *Gordon*, 76 Conn. App. 377, 389, 820 A.2d 299 ("[c]ontractual rights arising from agreements are subject to the fair exercise of the power of the state to secure health, safety, comfort or the general welfare of the community"), cert. denied, 264 Conn. 919, 828 A.2d 618 (2003).

The regulations governing nonconsensual tows were implemented to protect individuals whose vehicles have been towed without their consent from exorbitant towing and storage fees. Without regulation, a wrecker taking possession of a vehicle pursuant to a request by the police could charge whatever price the wrecker saw fit and the owner of the vehicle would have little choice but to pay the fee demanded to recover possession of the vehicle. *City Line Sales & Service, Inc.* v. *Commissioner of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-18-6043756-S (January 15, 2020) (*City Line*). Our legislature sought to address the imbalance inherent in nonconsensual towing transactions by directing the commissioner to establish reasonable rates for the towing, transporting, and storing of motor vehicles that fairly compensate wreckers for their services. See General Statutes § 14-66 (a) (2) (uniform rates established by commissioner must be just and reasonable).

Pursuant to that delegated authority, the commissioner promulgated regulations that prohibit wreckers from charging an additional fee for the release of a vehicle incident to a nonconsensual tow; Regs., Conn. State Agencies §§ 14-63-36b (2) (G) and 14-63-36c (e); because it would simply make no sense to regulate the price of the towing itself but allow wreckers to set their own rates for the release of the vehicle. See, e.g., *Modzelewski's Towing & Recovery, Inc.* v. *Commissioner of Motor Vehicles*, 322 Conn. 20, 36, 139 A.3d 594 (2016) (pretowing recovery service and actual towing are inextricably linked such that it would be inconsistent with legislative intent if states were preempted from regulating pretowing recovery service with respect to nonconsensual tow), cert. denied,    U.S.   , 137 S. Ct. 1396, 197 L. Ed. 2d 554 (2017). Enforcing an agreement that purports to authorize the plaintiff to charge a fee for the release of a vehicle that has been towed without an owner's consent plainly erodes the public policy reflected in the regulatory scheme. Such agreements would permit wreckers to conduct their operations in a manner that encourages, if not compels, those seeking the release of a vehicle to pay an extra fee, thereby subverting the consumer protections underlying the regulations. A recent Superior Court case illustrates this problem.

In *City Line*, a tow operator retrieving a disabled vehicle from a wrecker's storage yard following a nonconsensual tow was presented with and signed the same

form contract at issue in this appeal. *City Line Sales & Service, Inc.* v. *Commissioner of Motor Vehicles*, supra, Superior Court, Docket No. CV-18-6043756-S. In its decision, the trial court noted that there was evidence in the record establishing that tow operators assume that a wrecker that has taken possession of a disabled vehicle can make operators wait for hours, "an economically disadvantageous amount of time," before a vehicle is released—unless the operator agrees to pay the gate fee. Id. There was also testimony establishing that the insurance company had no choice but to authorize its contractor to pay the gate fee for the release of the vehicle or to dispute the charge and face additional daily storage charges—a practice the court found coercive.[13] Id. Consequently, the court in *City Line* concluded that "it would be contrary to the public policy underlying the regulations to allow [wreckers] to circumvent the department's price regulations by obtaining 'consent' . . . under the circumstances inherent in a nonconsensual tow." Id.

The contract at issue in the present case would have the same effect. Because it would thwart the very public policy goals the regulations were designed to promote, we conclude that the trial court properly determined that the contract was void as against public policy.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The term "gate fee" refers to a "fee for the labor and equipment needed to move a wrecked or disabled vehicle from the secured storage area to the designated vehicle retrieval area." *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 623, 15 A.3d 1063 (2011).

[2] The final bill totaled $795.50, which included an additional daily storage charge.

[3] Keith Vail, the plaintiff's owner, testified that the $93.59 fee encompassed both a charge for retrieving the vehicle from the storage yard and for immediately releasing the vehicle to the Tech driver when the driver arrived at the plaintiff's place of business. Vail testified that the fee was "all one fee . . . a yard/gate fee."

[4] General Statutes § 14-66 (h) defines a nonconsensual tow as the "towing or transporting of a motor vehicle in accordance with the provisions of section 14-145 or *for which arrangements are made by order of a law enforcement officer* or traffic authority, as defined in section 14-297." (Emphasis added.) See also Regs., Conn. State Agencies § 14-63-34 (b).

[5] General Statutes § 14-66 (a) (3) provides in relevant part: "With respect to the nonconsensual towing or transporting and the storage of motor vehicles, no such person, firm or corporation shall charge more than the rates and charges published by the commissioner. . . ."

Section 14-63-36c (a) of the Regulations of Connecticut State Agencies provides in relevant part: "[A] licensed wrecker service shall not charge the owner or operator of a motor vehicle . . . for nonconsensual towing or transporting services as defined in section 14-63-34, any fees which are in excess of the tow charge."

[6] Because the plaintiff did not raise the preemption claim during the administrative proceedings or plead that claim in its complaint, we decline to exercise our authority to order an articulation sua sponte pursuant to Practice Book § 61-10 (b).

[7] We note that "[f]ederal preemption of a state law . . . does not necessarily implicate the court's subject matter jurisdiction" and, therefore, may be waived. *Mullin* v. *Guidant Corp.*, 114 Conn. App. 279, 283, 970 A.2d 733, cert. denied, 292 Conn. 921, 974 A.2d 722 (2009); id. (trial court improperly treated party's motion for summary judgment asserting federal preemption defense as motion to dismiss for lack of subject matter jurisdiction); see

also *Peters* v. *Senman*, 193 Conn. App. 766, 782–83, 220 A.3d 114 (2019) (declining to address preemption claim that was not adequately briefed), cert. denied, 334 Conn. 924, 223 A.3d 380 (2020).

[8] General Statutes § 14-1 (109) defines " '[w]recker' " in relevant part as "a vehicle which is registered, designed, equipped and used for the purposes of towing or transporting wrecked or disabled motor vehicles for compensation . . . ."

[9] Section 14-63-36b (2) of the Regulations of Connecticut State Agencies provides in relevant part: " 'Tow charge' means the maximum amount determined by the commissioner that a licensed wrecker service may charge the owner or operator of a motor vehicle . . . for nonconsensual towing or transporting of a motor vehicle . . . . Except as otherwise specifically provided, the tow charge shall include . . . (G) Release of the vehicle to the owner or person otherwise entitled to possession of the vehicle upon presentation of appropriate credentials."

[10] Section 14-63-36c (e) of the Regulations of Connecticut State Agencies provides: "No additional fee shall be charged by a licensed wrecker service for releasing a vehicle to its owner or a person legally entitled to its custody."

[11] Although Vail testified at the hearing that the $93.59 fee encompassed the charge for maneuvering the disabled vehicle from the storage yard to the retrieval area and for immediate service when retrieving the car; see footnote 3 of this opinion; on appeal, the plaintiff relies entirely on the execution of the contract to argue that the gate fee was permissible. We note that whether the gate fee was imposed for maneuvering the vehicle from the storage lot to the retrieval area, immediately retrieving the vehicle when the Tech driver arrived, or both, does not alter the outcome in this case. Regardless, the plaintiff was not permitted to charge an additional fee for services related to the release of a vehicle in connection with a nonconsensual tow.

[12] We assume, without deciding, that the plaintiff and Amica's agent did form a contract when Amica's agent signed the "Consensual Tow Form."

[13] At the evidentiary hearing in the present appeal, Amica's witness similarly testified that Amica had agreed to pay the plaintiff the full amount billed, although it disputed the gate fee charge, because, "[i]n order to pick a vehicle up and stop storage charges, the shop needs to be paid."

Additionally, the court in *City Line* flatly rejected the wrecker's claim that a gate fee for "expedited service" is voluntary because, like here, the gate fee was included in the billed amount *the day before* the tow operator arrived to retrieve the vehicle from the wrecker's storage yard. *City Line Sales & Service*, *Inc.* v. *Commissioner of Motor Vehicles*, supra, Superior Court, Docket No. CV-18-6043756-S. We highlight this point to illustrate the inherent contradiction we find in the plaintiff characterizing a fee charged in advance as a voluntary fee for an "expedited" service.